U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2016 AUG -1  PM 5:40

CLERK

BY_____UAW_____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

LISA BARRETT,                          )
                                       )
        Plaintiff,                     )
                                       )
    v.                                 )    Case No. 2:16-cv-209
                                       )
JAMES VOLZ, MARGARET CHENEY,           )
and SARAH HOFMANN, members of the      )
Vermont Public Service Board in their  )
official capacities,                   )
                                       )
        Defendants.                    )

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
## PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION
(Doc. 5)

On July 29, 2016, this matter came before the court for an evidentiary hearing on

Plaintiff Lisa Barrett's motion for declaratory judgment, temporary restraining order, and

preliminary and permanent injunction (Doc. 5). Plaintiff asks the court to enjoin

Defendants James Volz, Margaret Cheney, and Sarah Hofmann, the members of the

Vermont Public Service Board (the "Board"), from enforcing the Board's July 15, 2016

Procedural Order Re: Logistics for Technical Hearing (the "Procedural Order"). The

Procedural Order prohibits the public from attending the Board's August 4, 2016

technical hearing on the petition of Vermont Gas Systems, Inc. ("VGS") to condemn

easement rights in Hinesburg, Vermont as part of its natural gas pipeline extension

project (the "VGS pipeline project").

Plaintiff further requests a permanent and mandatory injunction requiring the

Board to select a venue for the August 4, 2016 hearing that is large enough to

accommodate the media and the public. In the event Plaintiff is the prevailing party, she

asks for an award of her attorney's fees and costs pursuant to 42 U.S.C. § 1988.

Defendants oppose the motion, arguing that the Procedural Order's prohibition on public attendance at the August 4, 2016 hearing is necessary to protect the due process rights of the participants and to ensure an orderly proceeding in light of significant public disruption of several previous VGS pipeline proceedings. The Board argues that the public will have adequate access to the hearing through a number of alternative means, including live Internet streaming of the proceedings, a call-in number for an audio recording of the proceedings, and the posting of a transcript of the hearing on the Board's website. In addition, the Board has agreed to let the media attend the hearing, which it contends will adequately protect the public's right of access.

Plaintiff is represented by John L. Franco, Jr., Esq. Defendants are represented by Vermont Solicitor General Bridget C. Asay and Assistant Attorney General Benjamin D. Battles.

## I.    Findings of Fact.

For the purposes of the pending motion, based upon the admissible evidence, the court makes the following findings of fact:

1.  Plaintiff is a retired attorney who lives in Huntington, Vermont and opposes the VGS petition to extend its gas pipeline southward through a public park in Hinesburg. Although she is not a party to the VGS pipeline proceedings, she seeks to attend the August 4, 2016 hearing in person so that she can witness first-hand the proceedings, observe the demeanor of the Board and the parties, and communicate with the parties at appropriate times. Plaintiff has never previously disrupted a Board hearing. She is unable to receive reliable Internet streaming at her home. As live streaming will provide a video recording of the witnesses, but not of the parties or the Board members, she asserts that it will not allow her to fully observe the proceedings and determine whether they are fair.

2.  The Board, created by the Vermont Legislature in 1959, is a three member, quasi-judicial board that supervises, among other entities and issues, the rates, quality of service, and overall financial management of Vermont's public utilities: electric, gas, telecommunications, and private water companies. Pursuant to statute, "[t]he [B]oard shall have the powers of a court of record in the determination and adjudication of all matters over which it is given jurisdiction. It may render judgments, make orders and decrees, and enforce the same by any suitable process issuable by courts in this state." 30 V.S.A. § 9.

3.  The Board describes its operations as follows:

[our statutory mandate] often requires public hearings, evidentiary hearings, and other forms of inquiry and investigation to ensure that high-quality service is provided by the utilities at rates that are just and reasonable for both the customer and the utility. To that end, we investigate issues ranging from existing or proposed rates to the siting of utility plant[s]. These inquiries may be the subject of informal investigations or formal hearings in which the Board Members or individual hearing officers sit in a quasi-judicial capacity. Hearings before us are open to the public and are transcribed by a court reporter. After the hearings are held, the Board renders a decision which is written into an order. Our orders are available for public review in the office of the Clerk of the Board and also are posted to this web site. In most instances, our orders are appealable to the Vermont Supreme Court.

*See About the Public Service Board*, http://psb.vermont.gov/aboutthepsb (last visited August 1, 2016).

4.   "Customarily, the Board hearing room is open to the public, who frequently enter and observe Board proceedings." *See* Procedural Order, Ex. 1 at 5. Generally, the Board "welcome[s] the public's presence at [its] hearings[.]" *Id.*

5.   The Board concedes that the August 4, 2016 will be an evidentiary, adjudicative proceeding. The Board further concedes that members of the public have a presumptive right of access to it. The parties agree that the Board's hearing room is not a public forum.

6.   The Board's hearing room has an occupant capacity of seventy individuals. It is located in a multi-tenant building that includes other state offices. There is no security screening at the entrance to the building, or at the entrance to the Board's hearing room. There is a narrow hallway to the hearing room in which members of the public tend to congregate.

7.   Unlike a civil proceeding in court, the Board's hearings do not have a bailiff or other officers to maintain order during proceedings. If additional security is required, the Board contracts with local law enforcement agencies to provide the appropriate planning and personnel.

8.   At previous Board proceedings pertaining to VGS's pipeline project, the disruptive conduct of some members of the public interfered significantly with the Board's ability to conduct the proceedings and provide the participants with a meaningful opportunity to be heard. This disruptive conduct consisted of members of the public singing, humming loudly, clapping, whistling, and calling out, forcing the participants in the hearing to gather close to the court reporter and conduct the proceedings in a manner that rendered them inaccessible and unintelligible to anyone outside their small circle. Several disruptive members of the public moved close enough to the participants to impede their efforts to

proceed. The noise was sufficiently loud and persistent that other tenants in the building complained. The disruptive conduct took place both before and after a uniformed law enforcement officer advised the disruptive members of the public that disorderly conduct consisted of conduct that interfered with the Board's ability to conduct its business and could result in their arrest. On previous occasions, the disruption persisted even after the hearing officers repeatedly asked members of the public to refrain from engaging in conduct that interfered with the orderly conduct of the proceeding.

9.  In its Procedural Order, the Board identifies the proceedings that were disrupted as "preliminary conferences . . . held on December 30, 2015, in Docket 8645; February 6, 2016, in Docket 8641; and February 19, 2016, in Docket 8642." (Ex. 1 at 1 n.2.)

10. Prior to and during the disrupted VGS pipeline proceedings, the Board directed contracted law enforcement officers to refrain from interacting with disruptive members of the public. As a result, disruptive members of the public were neither asked nor ordered to leave the Board's hearing room. No member of the public was either arrested or directly and personally threatened with arrest if he or she persisted in disruptive conduct.

11. Video recordings of the disrupted VGS pipeline proceedings permit relatively accurate identification of the primary participants in the disruptive conduct by appearance, although not by name. During a recess in one disrupted proceeding, members of the public, including individuals who had previously been disruptive, discussed their views regarding the VGS pipeline in a courteous manner with a law enforcement officer who was present in the Board's hearing room. This suggests that not all disruptive members of the public would refuse to obey a lawful command to leave the premises and risk an arrest.

12. The Board has incurred additional expenses resulting from the need to provide security at Board proceedings that are charged to VGS ratepayers.

13. On March 17, 2016, the Board issued an Order seeking input regarding "what steps, if any, the Board should consider taking to ensure that future hearings can be conducted in an orderly fashion and to ensure the safety of all participants and anyone else in attendance." *Id.* at 2. VGS and the Vermont Department of Public Service ("DPS") responded to the Order.

14. VGS recommended issuing a notice of technical hearing that informs the public of its right to attend the hearing while making clear that disorderly conduct aimed at disrupting the proceeding will not be tolerated. It further recommended that the Board describe standards of acceptable and unacceptable behavior. VGS alternatively suggested holding the hearing in a larger room or conducting the hearing in a smaller space while allowing the public to observe via closed-circuit television.

4

15.   DPS advocated for the continued presence of the public in the Board's hearing room, but suggested that members of the public who disrupt the proceedings be removed by law enforcement. It also made the alternative suggestion that members of the public view the proceedings in a separate space by means of broadcasting devices.

16.   After investigating a number of potential locations for the August 4, 2016 hearing, all of which proved either unavailable or unworkable, the Board selected a state-owned training facility in Berlin, Vermont which law enforcement has concluded provides adequate security (the "Berlin hearing room").

17.   On July 15, 2016, the Board issued the Procedural Order, which restricts access to the August 4, 2016 hearing to "the parties, their counsel, their witnesses, and the Board members and their staff." *Id.* at 6. The Procedural Order describes "the disruptive behavior that repeatedly occurred in the Board hearing room this winter at prehearing conferences involving VGS" and notes that the "unwillingness of these [disruptive] persons to cooperate in maintaining order in the Board's hearing room made it impossible to conduct these proceedings in a normal manner." *Id.* at 4.

18.   The Procedural Order describes the rationale for restricted access to the August 4, 2016 hearing as follows:

> In our judgment, if a similar disruption were to recur at the August 4 technical hearing, it would interfere with the orderly conduct of an evidentiary hearing to the point of compromising the due process rights of the parties to a fair and orderly opportunity to present and test their respective evidence. Thus, it would serve neither the public interest nor the legal interests of any of the parties if we were to disregard the likelihood of future procedural disruptions and to risk a miscarriage of process by attempting to hold the August 4 technical hearing in the physical presence of the public, as is otherwise the norm in Board proceedings.

*Id.* The Procedural Order further states that the Board is "compelled to take precautions in this case to carry out the Board's responsibility to function as a quasi-judicial forum in which contested case proceedings are conducted to develop an evidentiary record subject to the safeguards of due process." *Id.* at 5.

19.   The Procedural Order prohibits all public attendance at the August 4, 2016 hearing in the Berlin hearing room and its surrounding premises as follows: "Members of the public will not be permitted to enter the premises of the secured facility or to be present in the hearing room. This will allow the technical hearing to be conducted without compromising law enforcement security concerns." *Id.* at 6. The Procedural Order describes these law enforcement security concerns as "significant personnel and resource challenges associated with restoring order to the Board's hearing room if the hired security personnel were called upon to

remove or arrest large numbers of disruptive individuals during the August 4 technical hearing." *Id.* at 5.

20. The Procedural Order states that the public "will be welcome to listen to the proceedings via telephone by dialing a toll-free conference call number[.]" *Id.* at 1. In addition, although the Procedural Order states that a live broadcast or live Internet streaming of the proceedings is not feasible, the Board has subsequently arranged for a video of the hearing to be live-streamed on the Onion River Community Access Media YouTube channel. The Board will also make a transcript of the hearing available for public review on its website.

21. The Berlin hearing room has an occupant capacity of approximately forty-eight individuals.

22. Since issuing the Procedural Order, the Board has determined that it will allow members of the media to attend the August 4, 2016 hearing. No evidence was presented regarding who and how it would be determined that persons seeking to access the hearing represent the media or how many members of the media will be accommodated.

23. A law enforcement officer testified that, based upon his prior experience providing security for disrupted VGS pipeline proceedings, to arrest each individual disrupting the August 4, 2016 hearing would involve a four to five hour process requiring numerous law enforcement personnel. The officer conceded that measures short of an arrest could be undertaken, but opined that certain participants would not leave the hearing voluntarily, and would require forced removal and arrest.

## II.    Conclusions of Law and Analysis.

### A.    Standard of Review.

Plaintiff's motion is styled as one for a temporary restraining order, or in the alternative, as a motion for a preliminary and permanent injunction. Because Defendants had notice and an opportunity to be heard, and because there is an adequate factual record before the court, the court adjudicates the motion as a request for a preliminary injunction. *See* Fed. R. Civ. P. 65(b). As the pending motion was adjudicated on an expedited basis with no opportunity for discovery and a limited opportunity for briefing, the court denies without prejudice Plaintiff's request for a permanent injunction.[1]

---

[1] Defendants do not challenge Plaintiff's standing or this court's jurisdiction. Accordingly, the court need not and does not address Defendants' argument that Plaintiff could and should have requested expedited review of the Board's Procedural Order by the Vermont Supreme Court pursuant to 30 V.S.A. § 12; Vt. R. App. P. 5.1.

A preliminary injunction "is an extraordinary remedy never awarded as of right."
*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).

> A plaintiff seeking a preliminary injunction must establish that he is likely
> to succeed on the merits, that he is likely to suffer irreparable harm in the
> absence of preliminary relief, that the balance of equities tips in his favor,
> and that an injunction is in the public interest.

*Id.* at 20 (citations omitted).

Where a party seeks an injunction that is mandatory in nature in that it
"command[s] some positive act" as opposed to a "prohibitory injunction" that merely
maintains the status quo, a more rigorous standard is applied. *Citigroup Glob. Mkts., Inc.
v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 n.4 (2d Cir. 2010)
(internal quotation marks omitted). A mandatory preliminary injunction should issue
"only upon a clear showing that the moving party is entitled to the relief requested, or
where extreme or very serious damage will result from a denial of preliminary relief." *Id.*
(internal quotation marks omitted). As the Second Circuit has observed, "[t]he
distinction between mandatory and prohibitory injunction is not without ambiguities or
critics." *Tom Doherty Assocs., Inc. v. Saban, Entm't, Inc.*, 60 F.3d 27, 34 (2d Cir. 1995);
*see also Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 835 (1994)
(noting that "in borderline cases injunctive provisions containing essentially the same
command can be phrased either in mandatory or prohibitory terms.").

> The bottom line is that, if a preliminary injunction will make it difficult or
> impossible to render a meaningful remedy to a defendant who prevails on
> the merits at trial, then the plaintiff should have to meet the higher standard
> of substantial, or clear showing of, likelihood of success to obtain
> preliminary relief. Otherwise, there is no reason to impose a higher
> standard.

*Tom Doherty Assocs., Inc.*, 60 F.3d at 35.

In this case, Plaintiff seeks an injunction that will both preserve the public's
presumptive right of access to the August 4, 2016 hearing and require the Board to revise
its Procedural Order. Plaintiff's proposed preliminary injunction thus has both
mandatory and prohibitory features. With regard to the pending motion, there is no

7

reason to impose a higher standard of proof. As further described below, Defendants will not be deprived of a meaningful remedy, and the status quo may be restored, even if Plaintiff prevails in obtaining preliminary injunctive relief.

### B.    Plaintiff's First Amendment Presumptive Right of Access.

"Courts and commentators have long recognized the centrality of the openness to adjudicatory proceedings[.]" *N.Y. Civil Liberties Union v. N.Y.C. Transit Auth.* ("*NYCLU*"), 684 F.3d 286, 296 (2d Cir. 2011). Indeed, a plurality of the United States Supreme Court has concluded that the public's right to be present at such proceedings is "implicit in the guarantees of the First Amendment" and that "without the freedom to attend such trials, . . . important aspects of freedom of speech . . . could be eviscerated" because "[f]ree speech carries with it some freedom to listen." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 576, 580 (1980) (plurality opinion) (internal quotation marks omitted). There is thus "an individual First Amendment right of access to court proceedings even though [a person is] not a party to and [has] no other official connection with them" and has actively protested against such proceedings in the past. *Huminski v. Corsones*, 396 F.3d 53, 58 (2d Cir. 2005).

For purposes of the pending motion, Defendants concede that the Board's August 4, 2016 hearing is a quasi-adjudicative proceeding to which there is a presumptive right of public access. Controlling precedent supports that position. Under the Supreme Court's "experience and logic" test, the court looks to "the historical experience in that *type* or *kind* of hearing throughout the United States" and "asks whether openness enhances the ability of the government proceeding to work properly and to fulfill its function." *NYCLU*, 684 F.3d at 301-02 (internal quotation marks omitted). "[T]here is no principle that limits the First Amendment right of access to any one particular type of government process[,]" and when an "adjudicatory body[] operates under procedures modeled on those of the courts, and impose[s] official and practical consequences on members of society[,]" the presumption of public access under the First Amendment applies. *Id.* at 298-300 (noting that the "focus [is] not on formalistic descriptions of the

8

government proceeding but on the kind of work the proceeding actually does and on the First Amendment principles at stake.") (internal quotation marks omitted).

At its August 4, 2016 hearing, the Board intends to take sworn testimony and other evidence, engage in fact-finding, apply the law, and render a determination that affects property rights. *See* Ex. 1 at 1 n.1 ("Today's Order concerns an approaching evidentiary hearing on a . . . condemnation petition VGS has filed seeking an easement to construct a segment of the project in Hinesburg, Vermont"). In doing so, the Board will "operate[] under procedures modeled on those of the courts, and 'impose[] official and practical consequences upon members of society.'" *NYCLU*, 684 F.3d at 300 (quoting *Richmond Newspapers*, 448 U.S. at 595 (Brennan, J., concurring)).[2] The Board's Procedural Order acknowledges that the public is customarily invited to attend such hearings and has attended them in the past. Consistent with both experience and logic, the Board's August 4, 2016 hearing is therefore one in which there is a presumptive right of public access.

The presumptive right of access can be overcome if there is a reasonable determination that a person "might pose a threat to persons, property, or proceedings and if the restrictions on his [or her] access were reasonably tailored to meet the legitimate goals of the exclusion." *Huminski*, 396 F.3d at 59.

> In our Circuit, a government proceeding subject to a qualified First Amendment right of access may be closed if four factors are satisfied: (1) the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, (2) the closure must be no broader than necessary to protect that interest, (3) the [adjudicatory body] must consider reasonable alternatives to closing the proceeding, and (4) it must make findings adequate to support the closure.

*NYCLU*, 684 F.3d at 304 (internal quotation marks omitted).

---

[2] *See* Ex. 1 at 5 (noting that at the August 4, 2016 hearing the Board will "perform the particular governmental function of providing an orderly forum for a technical hearing on the condemnation petition at issue in this case . . . and [will] carry out the Board's responsibility to function as a quasi-judicial forum in which contested case proceedings are conducted to develop an evidentiary record subject to the safeguards of due process."); *see also* Vt. Pub. Serv. Bd., Rule 2.103 (noting that "[t]he Vermont Rules of Civil Procedure . . . shall apply" in all proceedings before the Board).

The Board's Procedural Order cites a number of interests that it seeks to protect through prohibition of the public's presence at the August 4, 2016 hearing. Insofar as the Board asserts that it must prohibit public access "to ensure the *safety* of all participants and anyone else in attendance[,]" (Ex. 1 at 2) (emphasis supplied), it proffered no evidence that would support closing the hearing on that basis. In the disrupted VGS pipeline proceedings, law enforcement neither asked any disruptive participants to leave, nor forcibly escorted them from the proceedings. As a result, there is no evidence that they would refuse to do so in response to a lawful command.[3] Other than expense and delay, the Board presented no evidence of prejudice it will suffer if law enforcement is forced to remove and arrest disruptive members of the public.

The Board's remaining and principal ground for closing the August 4, 2016 to the public is its need to conduct an orderly evidentiary hearing that will afford the participants "a fair and orderly opportunity to present and test their respective evidence" consistent with their due process rights. *Id.* at 4. This is an important governmental interest that warrants significant protection. *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) ("This Court consistently held that some form of hearing is required before an individual is finally deprived of a property interest. . . . The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.") (internal citations and quotation marks omitted). In addition to the Board's interest in an orderly and fair proceeding, there is a compelling public interest in access to adjudicative proceedings to "foster[] an appearance of fairness," *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 606 (1982), and thereby "boost[] community trust in the administration of justice." *Brown v. Artuz*, 283 F.3d 492, 498-99 (2d Cir. 2002). The Board has thus articulated at least two important interests that will be prejudiced if members of the public are permitted to substantially disrupt the orderly conduct of the August 4, 2016 hearing.

---

[3] Arguably the sole reason why certain members of the public attended prior VGS pipeline proceedings was to disrupt them. However, assuming certain members of the public may seek to attend the August 4, 2016 hearing for that same purpose, removal of disruptive individuals as opposed to a complete ban on public attendance represents a less restrictive alternative.

The court also considers the interests of disruptive members of the public to attend the August 4, 2016 hearing. There is, of course, no First Amendment right to disrupt adjudicatory proceedings.[4] Moreover, to the extent disruptive participants make it difficult to see or hear the Board's proceedings, they may impair the First Amendment rights of other members of the public who seek to attend the Board's hearing to ensure the fair administration of justice. *See Richmond Newspapers, Inc.*, 448 U.S. at 571-72 ("To work effectively, it is important that society's [quasi-judicial] process satisfy the appearance of justice, and the appearance of justice can best be provided by allowing people to observe it"). The rights of disruptive members of the public are thus confined to the ability to attend the August 4, 2016 hearing on the same terms and conditions as other members of the public. *See Huminski*, 396 F.3d at 87 (banning a protestor from all court proceedings has the potential for viewpoint discrimination and is "wildly disproportionate to the perceived threat").

The court must next consider whether the Procedural Order's prohibition on public attendance is no broader than necessary, *NYCLU*, 684 F.3d at 304, and "narrowly tailored" to protect the Board's articulated interests. *Press-Enter. Co. v. Superior Court* ("*Press-Enter. I*"), 464 U.S. 501, 510 (1984). "The quantum of prejudice that the [Board] must show increases the more extensive the closure sought would be." *Huminski*, 396 F.3d at 86. "When the closure sought is total or nearly so, the district court must find the prejudice to be overriding." *Id.* (internal quotation marks omitted).

The Procedural Order bans all public attendance at the Board's August 4, 2016 hearing. In order for this near total closure to be warranted, the Board must demonstrate that it adequately considered less restrictive alternatives. *See NYCLU*, 684 F.3d at 305 (observing that a hearing officer "does not come close to meeting our standard for

---

[4] Because the Board's hearing room is not a public forum, "governmental restrictions on expressive conduct or speech are constitutional so long as they are reasonable in light of the use to which the forum is dedicated and 'are not an effort to suppress expression merely because public officials oppose the speaker's view.'" *Huminski v. Corsones*, 396 F.3d 53, 90 (2d Cir. 2004) (quoting *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 802-03 (1985)).

justifying closure" where he or she "neither considers alternatives nor makes any findings regarding the relative weight of the interests at stake"). The Procedural Order recites that the Board "reviewed and weighed many considerations in seeking an appropriate way to accommodate the public's interest in monitoring the Board proceedings[,]" Ex. 1 at 3, but it does not adequately explain why a total ban on public attendance is required.

Although the Board could relatively easily identify the members of the public who have disrupted past VGS pipeline proceedings, it cannot *prospectively* exclude members of the public on that basis. *See id.* at 297-98 ("[T]he public's right implies that particular individuals may not be summarily excluded from court."); *Huminski*, 396 F.3d at 83-84 (ruling that a blanket denial of access to court proceedings to a protestor who seeks only to attend them violates the First Amendment). "Where certain speech is associated with particular problems, silencing the speech is sometimes the path of least resistance." *McCullen v. Coakley*, 134 S. Ct. 2518, 2534 (2014). Exclusion, however, requires "an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enter. I*, 464 U.S. at 510.

The Procedural Order properly does not ban certain members of the public from attending the August 4, 2016 hearing merely because they have been disruptive in the past.[5] However, it neither targets the previous disruptive behavior, nor proposes anything other than a blanket prohibition in response to the Board's legitimate concerns.

The parties have neither asked for closure, nor insist that the public's attendance at the hearing will impair their rights. The proceedings themselves are not confidential, will disclose no information that poses a threat to any individual or to an ongoing investigation, and would otherwise be open to the public. Plaintiff is an individual who seeks to attend the hearing and who poses no credible risk of disrupting it or interfering

---

[5] This, of course, does not preclude the Board from warning members of the public, asking them to leave the Board's hearing if they disrupt it, and taking lawful measures if an individual refuses to obey a lawful command to leave. *See Huminski*, 396 F.3d at 87 (noting "[a] potential spectator may be excluded from a courtroom on a simple issue of propriety: reasonably unacceptable dress, unruly behavior, efforts inappropriately to communicate views in the courtroom, possession of personal property banned from the court (e.g., cell phones, cameras, or recording devices), and the like.").

with the participants' due process rights. She, too, however is barred from attending the August 4, 2016 hearing. Although the Board has proposed various means for public access to the August 4, 2016 hearing, none of those proposals includes public attendance. A member of the public will thus be unable to witness firsthand the proceedings, observe the demeanor and interaction of the participants, and "come and bear witness to what happens beyond the [hearing room] door." *Huminski*, 396 F.3d at 84. The Board's alternative proposals for public access, albeit well-intentioned, therefore do not provide an adequate substitute for public attendance. As a result, the exclusion of all members of the public from the August 4, 2016 hearing because of prior disruptions is too broad and is not supported by adequate factual findings. *See Press-Enterprise I*, 464 U.S. at 509 ("Closed proceedings, although not absolutely precluded, must be rare and only for cause shown"); *NYCLU*, 684 F.3d at 305 (affirming permanent injunction against closure of administrative agency's adjudicative procedures and "requiring any future closure of . . . hearings to the public to comport with the narrow tailoring and on-the-record factfinding required by the First Amendment").

Because the Procedural Order's prohibition on public attendance is not supported by adequate factual findings, is not narrowly tailored to protect the Board's interests in orderly proceedings, and undermines rather than advances the public's compelling interest in attendance at such proceedings, it cannot be sustained under the First Amendment.

### C. Whether Plaintiff is Entitled to Injunctive Relief.

#### 1. Whether Plaintiff will Suffer Irreparable Harm.

"The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506-07 (1959). A showing that irreparable harm is "actual and imminent" and "cannot be remedied by an award of money damages" is thus "the single most important prerequisite for the issuance of a preliminary injunction." *Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1999) (internal quotation marks omitted). Indeed,

13

"a showing of irreparable harm is fundamental to any grant of injunctive relief."
*Citigroup Glob. Mkts., Inc.*, 598 F.3d at 37 n.6.

Courts analyzing whether a party has satisfied the exacting standard of
"irreparable harm"

> must not adopt a "categorical" or "general" rule or presume that the
> plaintiff will suffer irreparable harm . . . [but i]nstead, the court must
> actually consider the injury the plaintiff will suffer if he or she loses on the
> preliminary injunction but ultimately prevails on the merits, paying
> particular attention to whether the "remedies available at law, such as
> monetary damages, are inadequate to compensate for that injury."

*Salinger v. Colting*, 607 F.3d 68, 80 (2d Cir. 2010) (quoting *eBay Inc. v. MercExchange,
L.L.C.*, 547 U.S. 388, 391, 393-94 (2006)).

Plaintiff has established that, without an injunction, she will be denied the ability
to attend the Board's August 4, 2016 hearing.  This harm is actual and imminent.  *See
Mullins v. City of N.Y.*, 634 F. Supp. 2d 373, 392 (S.D.N.Y. 2009) ("[A] clear causal link
exists between defendants' conduct and the deprivation of plaintiffs' First Amendment
rights.  The threat . . . is not conjectural.").  Monetary damages will not remedy Plaintiff's
harm if she ultimately prevails on the merits, as the hearing she seeks to attend will have
been completed by that time.  *See Clear Channel Outdoor, Inc. v. City of N.Y.*, 608 F.
Supp. 2d 477, 493 (S.D.N.Y. 2009) ("If the Court were to find Plaintiffs' First
Amendment claims credible, it would necessarily have to find that the Plaintiffs suffered
irreparable harm.  The essential inquiry in this dispute is whether those First Amendment
claims are convincing."); *Weingarten v. Bd. of Educ. of City Sch. Dist. of City of N.Y.*,
591 F. Supp. 2d 511, 515 (S.D.N.Y. 2008) ("[P]laintiffs claim that they already have
been and, absent an injunction will be, prohibited by the challenged aspects of the
Regulation from wearing political campaign buttons and from posting campaign
materials.  If and to the extent that this offends their First Amendment rights, they have
satisfied the irreparable harm prong.").  Plaintiff has therefore established irreparable
harm.

### 2. Whether Plaintiff is Likely to Succeed on the Merits.

Plaintiff argues that prohibiting access to the August 4, 2016 hearing violates the public's First Amendment right to access a quasi-adjudicative hearing. For the reasons previously stated, the court finds Plaintiff has established a likelihood that she will succeed on the merits of that claim.

### 3. Whether the Balance of the Equities Tips in Plaintiff's Favor and Injunctive Relief is in the Public Interest.

Plaintiff has established that as a non-disruptive member of the public, the balance of equities tips in her favor because she poses no risk to the Board's evidentiary hearing but is barred from attending it. "[W]henever a request for a preliminary injunction implicates public interests, a court should [also] give some consideration to the balance of such interests[.]" *DeBuono*, 175 F.3d at 233 (internal quotation marks omitted); *Jones v. Nat'l Conference of Bar Exam'rs*, 801 F. Supp. 2d 270, 290 (D. Vt. 2011). In this case, the public interest favors the granting of injunctive relief. Although the Board has articulated important interests that may be jeopardized if the August 4, 2016 hearing is disrupted, the risk of disruption is outweighed by the certainty that the public's right of access will be severely hampered by a complete prohibition on public attendance.

Because Plaintiff has established irreparable harm, a likelihood of success on the merits, that the balance of equities tips in her favor, and that an injunction is in the public interest, she has established her entitlement to preliminary injunctive relief. *See Winter*, 555 U.S. at 24. Plaintiff's motion for a preliminary injunction is therefore GRANTED IN PART, and that portion of the Board's Procedural Order prohibiting all public attendance at the August 4, 2016 hearing is ENJOINED.

### D. Whether the Board must Find Another Location.

Plaintiff asks the court to require the Board to find an alternative to the Berlin hearing room so that more members of the public may attend the August 4, 2016 hearing. She argues that with members of the media present, the Berlin hearing room will be too small to accommodate the many members of the public who seek to attend. The Board counters that is has undertaken substantial efforts to find a hearing room that will

accommodate the participants and provide adequate security.  It argues that it should not be compelled to find another location especially as it plans to offer live-streaming, a call-in audio feed, and a transcript of the proceeding in addition to media access.

Although the Berlin hearing room has less per person capacity than the Board's customary hearing room, it is not patently inadequate for the proposed task.  Moreover, the Board is not required to accommodate every member of the public who wishes to attend.  *See Huminski*, 396 F.3d at 87 (observing that "even the best behaved and least objectionable person seeking admittance may be barred from a courtroom for mundane practical reasons, such as the physical capacity of the courtroom in question").  The Board is also not required to investigate every possible venue in the State of Vermont to ensure that it has chosen the best possible forum for its August 4, 2016 hearing.  *See id.* at 86 (observing that restriction on public access need not be "necessarily the least restrictive means available to protect the endangered interest").  The Board also may also express a preference for accommodating the media in an effort to reach as many members of the public as possible.  *Id.* at 87 (noting that "in pursuit of a greater flow of information to the public," "preferring in some general way . . . admission for members of the 'press,' is likely to pass constitutional muster").  Against this backdrop, Plaintiff has not demonstrated she is likely to prevail on the merits in establishing that the Board's use of the Berlin hearing room violates her First Amendment rights.  Her request for injunctive relief on this ground must therefore be DENIED.

## CONCLUSION

For the foregoing reasons, the court hereby GRANTS IN PART and DENIES IN PART Plaintiff's motion for declaratory judgment, temporary restraining order, and preliminary and permanent injunction. (Doc. 5.)  The Board hereby is preliminarily ENJOINED from prohibiting all public attendance at the August 4, 2016 hearing.  It is not, however, required to find an alternative location for the hearing or permit the attendance of every member of the public who seeks to attend.  Although the parties have not addressed the issue of security pursuant to Fed. R. Civ. P. 65(c), the court finds no basis on which to order Plaintiff to post security to pay the costs and damages sustained

16

by any party found to have been wrongfully enjoined or restrained.  Defendants may petition the court if they contend security is necessary.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this __15th__ day of August, 2016.

Christina Reiss, Chief Judge
United States District Court